UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| In re: ) | Lead Case No. 1:03-cv-1000 |
| ) | |
| UNUMPROVIDENT CORPORATION ) | CLASS ACTION |
| ERISA BENEFITS DENIAL ACTIONS ) | |
| ) | MDL Case No. 1:03-md-1552 |
| ) | |
| ) | Judge Curtis L. Collier |

| | |
|---|---|
| CAROL J. TAYLOR, ) | |
| ) | Case No. 1:03-cv-1009 |
| Plaintiff, ) | |
| ) | CLASS ACTION |
| v. ) | |
| ) | MDL Case No. 1:03-md-1552 |
| UNUMPROVIDENT CORPORATION, *et al.*, ) | |
| ) | Judge Curtis L. Collier |
| Defendants. ) | |

### FIRST MANAGEMENT ORDER

This Management Order relates to a subset of cases in Multidistrict Litigation No. 1552 ("MDL-1552") filed by plaintiffs seeking to represent a class of claimants who allege they were improperly denied disability benefits by Defendant UnumProvident Corporation and related defendants. Plaintiffs' attorneys for the eight cases in the above-captioned class actions have submitted various proposals and responses for the organization and management of the plaintiffs' side of this litigation. The submissions cover such issues as the selection of a firm or firms to act as lead counsel; the division of work between lead counsel and the rest of the plaintiffs' attorneys; schedules for pleading, briefing and filing pretrial motions, conducting discovery, and preparing the case for trial as well as for mediation; and other such matters concerning the way the case is managed. As the Court stated at the initial management conference on November 19, 2003, the



ultimate case management plan should promote efficiency, discourage duplication of work, strive to keep costs down, and pursue both a pretrial track and a mediation/settlement track simultaneously.

The submissions by the plaintiffs' attorneys agree on many of the aspects of the case management plan, such as procedures for filing papers and serving the parties and the general role of lead counsel. The parties diverge sharply, however, on the identity of the firm or firms that should act as lead counsel and the exact structure of that leadership. Not surprisingly, all of the firms that submitted a plan advocated for their own role as lead counsel or co-lead counsel. Basically, the submissions can be broken down into four different plans: (1) the primary Wechsler Harwood / Kirtland & Packard plan, which calls for these firms to serve as co-lead counsel and for a steering committee composed of seven law firms representing each of the named plaintiffs in seven of the cases; (2) the alternative Wechsler Harwood / Kirtland & Packard plan, which calls for one or the other of these firms to be lead counsel and for a steering committee; (3) the Quadrino & Schwartz plan, which calls for this firm to be lead counsel; and (4) the *Taylor* plan, which calls for Alexander, Hawes & Audet, LLP to be lead counsel for plaintiffs in that action, operating independent of--yet in coordination with--the leadership structure for the other seven actions.

Several parties that did not submit applications provided comment regarding the appointment of lead counsel, the organization of these cases, and other matters to be addressed in this Order. Because the Judicial Panel for Multidistrict Litigation ("JPML") transferred cases to this Court only for pretrial proceedings pursuant to 28 U.S.C. § 1407(a), this Order does not include any division of work relating to the trials that could take place in the various transferor courts after pretrial proceedings conclude here. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998).

2

After reviewing all of the submissions, the Court sets forth the following organizational structure for management of the plaintiffs' cases in the actions addressed in section I.

I.   **ORDER OF CONSOLIDATION AND COORDINATION**

A.   The following actions were either filed in this District or transferred to the Court by the JPML and have been **CONSOLIDATED** for pretrial purposes pursuant to Fed. R. Civ. P. 42(a):

|          Abbreviated Case Name          | Civil Case No. |
|-----------------------------------------|----------------|
| *Dauphinee, et al. v. UnumProvident Corp., et al.,* | 1:03-cv-390 |
| *Rombeiro v. Unum Life Ins. Co., et al.,* | 1:03-cv-1000 |
| *Harris v. UnumProvident Corp., et al.,* | 1:03-cv-1001 |
| *Keir, et al. v. UnumProvident Corp., et al.,* | 1:03-cv-1002 |
| *Davis, et al. v. UnumProvident Corp., et al.,* | 1:03-cv-1004 |
| *Contreras v. UnumProvident Corp., et al.,* | 1:03-cv-1008 |
| *Rudrud, et al. v. UnumProvident Corp., et al.,* | 1:03-cv-1010 |

*See* Case No. 1:03-md-1552, Document No. 15. These seven cases are referred to as the "ERISA Benefits Denial Actions" and the lead case is number 1:03-cv-1000.

B.   The following action is **COORDINATED** with the ERISA Benefits Denial Actions for pretrial purposes:

*Taylor v. UnumProvident Corp., et al.,*          1:03-cv-1009

C.   The actions listed in A and B above, and actions that are subsequently consolidated or coordinated by the Court with the ERISA Benefits Denial Actions or the *Taylor* action, shall be collectively referred to as the "Coordinated Benefits Actions."

D.   No action taken pursuant to this Order shall have the effect of making any person, firm, or corporation a party to any action in which it has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

II.    **LEAD CASE FILES AND CAPTIONS**

    A.    All documents relating to the ERISA Benefits Denial Actions shall be filed in case number 1:03-cv-1000, pending conclusion of the pretrial proceedings in these actions. *See* Case No. 1:03-md-1552, Document No. 15. Such filings shall bear the following caption:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 1:03-cv-1000 |
| | ) | |
| | ) | <u>CLASS ACTION</u> |
| UNUMPROVIDENT CORP. | ) | |
| ERISA BENEFITS DENIAL ACTIONS | ) | MDL Case No. 1:03-md-1552 |
| | ) | |
| | ) | Judge Curtis L. Collier |

    *Id.* The Clerk shall file and docket a copy of this Order in each of the consolidated actions listed in section I.A and shall serve a copy of this Order on counsel of record in each of these consolidated actions. It is not necessary for the Clerk to file and docket consolidated filings subsequent to this Order in the other individual actions as it will be understood, because of this Order, that each filing of any kind filed in case number 1:03-cv-1000 will be deemed to have been filed in the individual cases.

    B.    Documents relating **only** to the *Taylor* action and not to the ERISA Benefits Denial Actions shall be filed in case number 1:03-cv-1009.

C.   All documents relating to the ERISA Benefits Denial Actions **and** the *Taylor* action (the "Coordinated Benefits Actions") shall be filed in case number 1:03-cv-1000, pending conclusion of the pretrial proceedings in these actions.  Such coordinated filings shall bear the following caption:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 1:03-cv-1000 |
| | ) | |
| | ) | <u>CLASS ACTION</u> |
| UNUMPROVIDENT CORP. | ) | |
| ERISA BENEFITS DENIAL ACTIONS | ) | MDL Case No. 1:03-md-1552 |
| | ) | |
| | ) | Judge Curtis L. Collier |

| | | |
|---|---|---|
| CAROL J. TAYLOR, | ) | |
| | ) | Case No. 1:03-cv-1009 |
| Plaintiff, | ) | |
| | ) | <u>CLASS ACTION</u> |
| v. | ) | |
| | ) | MDL Case No. 1:03-md-1552 |
| UNUMPROVIDENT CORP., et al., | ) | |
| | ) | Judge Curtis L. Collier |
| Defendants. | ) | |

The Clerk shall file and docket a copy of this Order in the *Taylor* action (Case No. 1:03-cv-1009).  However, it is not necessary for the Clerk to file and docket such coordinated filings subsequent to this Order in the *Taylor* action as it will be understood, because of this Order, that documents relating to the Coordinated

Benefits Actions filed in case number 1:03-cv-1000 and bearing the caption set forth immediately above will be deemed to have been filed in the *Taylor* action.

D.   As set forth in the Practice and Procedure Order of October 9, 2003 (*See* Case No. 1:03-md-1552, Document No. 9, ¶ 2), if a document relates to all the actions involved in MDL-1552 it shall bear the caption set forth on that order and be filed in case number 1:03-md-1552.

## III.   NEWLY FILED OR TRANSFERRED ACTIONS

A.   When a class action alleging an improper denial of benefits by the UnumProvident Defendants is hereafter filed in this Court or transferred here from another court, the Clerk of this Court shall:

1.   File a copy of this Order in the separate file for such action;

2.   Serve a copy of the relevant transfer/reassignment order on counsel for the parties in the Coordinated Benefits Actions;

3.   Make an appropriate entry in case number 1:03-cv-1000;

4.   Serve a copy of this Order on the attorneys for the plaintiff(s) in the newly filed or transferred case.

5.   Upon the first appearance of any new defendant, mail to the attorneys for the defendant in such newly filed or transferred case a copy of this Order.

B.   The Court expects counsel to call to the attention of the Clerk of this Court the filing or transfer of any action which might properly be consolidated or coordinated with these actions.

6

IV.   **APPLICATION OF THIS ORDER TO SUBSEQUENTLY FILED OR RELATED CASES**

This Order and all subsequent orders of this Court regarding the ERISA Benefits Denial Actions or the *Taylor* action shall apply to each action alleging claims similar to those set forth in these consolidated and coordinated actions that is subsequently filed in or transferred to this Court. Such orders shall apply unless a party objecting to the consolidation or coordination of that case or to any other provision of this Order serves an application for relief from this Order or from any of its provisions within ten (10) days after the date on which the Clerk serves a copy of this Order on counsel for that party.

V.   **ORGANIZATION OF COUNSEL**

A.   The following firm shall serve as Lead Counsel for all plaintiffs in the ERISA Benefits Denial Actions (hereinafter "Lead Counsel" or "Lead Counsel for the ERISA Benefits Denial Actions"):

    Wechsler Harwood LLP
    488 Madison Avenue
    New York, NY 10022
    212-935-7400

B.   The following firm shall serve as Lead Counsel for all plaintiffs in the *Taylor* action (hereinafter "Lead Counsel" or "*Taylor* Lead Counsel"):

    Alexander, Hawes & Audet, LLP
    300 Montgomery Street, Suite 400
    San Francisco, CA 94104
    415-921-1776

*Taylor* Lead Counsel shall file no pleading, motion, or other document that substantially duplicates any pleading, motion, or other document filed by Lead Counsel for the ERISA Benefits Denial Actions. The Court expects *Taylor* Lead

Counsel will communicate and coordinate their efforts to the maximum extent possible with Lead Counsel for the ERISA Benefits Denial Actions.

C.    Lead Counsel shall be generally responsible for conducting the litigation and coordinating the activities in their respective case(s). Lead Counsel shall take all steps necessary to ensure that the cases are managed efficiently, that there is no duplication of effort or work by Lead Counsel or other plaintiffs' counsel, and that no work is undertaken by any of plaintiffs' counsel which does not advance the interest of plaintiffs and the putative class.

D.    Lead Counsel shall have the following responsibilities in their respective case(s), to be carried out either personally or through such counsel as Lead Counsel may designate, with emphasis on these three main areas of responsibility: (1) mediation, (2) discovery, and (3) pretrial litigation and motion practice. Lead Counsel shall:

1.    Sign any amended complaints, motions, briefs, discovery requests or objections, or notices on behalf of his plaintiffs, or those plaintiffs filing the particular submission;

2.    Conduct all pretrial proceedings on behalf of plaintiffs that arise while the cases are consolidated in this Court;

3.    Brief and argue motions;

4.    Initiate and conduct discovery;

5.    Act as spokesperson at pretrial conferences;

6.    Employ and consult with experts;

7.    Conduct settlement negotiations with defense counsel on behalf of plaintiffs

8

and enter into settlements with defendants;

8.      Prepare and distribute periodic status reports to all plaintiff's counsel in the ERISA Benefits Denial Actions;[1]

9.      Call meetings of plaintiffs' counsel when deemed appropriate;

10.      Establish committees of plaintiffs' counsel and designate counsel to chair or co-chair such committees;

11.      Distribute to all plaintiffs' counsel copies of all notices, orders, and decisions of the Court as necessary and to the extent not communicated directly by the Court to all plaintiffs' counsel, maintain an up-to-date service list available to all plaintiffs' counsel upon request, and keep a complete file of all pleadings, motions, briefs, discovery requests, notices, orders, and decisions and make those files available for inspection by plaintiffs' counsel at reasonable hours;

12.      Otherwise coordinate the work of all plaintiffs' counsel in the ERISA Benefits Denial Actions and the *Taylor* action, and perform such other duties as plaintiffs' Lead Counsel deem necessary and appropriate; and

13.      Make all work assignments in such a manner as to promote the orderly and efficient conduct of this litigation, and to avoid unnecessary duplication of work and unproductive efforts.

E.      Lead Counsel shall coordinate activities with other plaintiffs' lead counsel in MDL-1552 to avoid duplication and to promote efficiency in the filing, serving, or

---

[1] This responsibility applies only to Lead Counsel for the ERISA Benefits Denial Actions.

implementation of pleadings, discovery, and other Court proceedings.

F.    Defendants' counsel may rely upon agreements made with plaintiffs' Lead Counsel. Such agreements shall be binding on all plaintiffs represented by the agreeing Lead Counsel.

G.    Plaintiffs' Lead Counsel should, to the extent practicable, delegate to additional plaintiffs' counsel specific tasks within the three main areas of responsibility listed in subsection D above, in order to move the case forward in a timely and efficient manner while encouraging the participation of the various other plaintiffs' firms. Such areas of responsibility might include, but are not limited to: (1) consolidated amended complaint; (2) opposition to motions to dismiss; (3) mediation coordinator; (4) discovery; (6) class certification. Such delegation of tasks is within the discretion of Lead Counsel; however, Lead Counsel shall promptly notify the Court of such delegation.

Lead Counsel shall add to the above list of responsibilities as each deems appropriate throughout the course of the litigation. Each counsel assigned to a particular task may complete work assignments with the assistance of other plaintiffs' counsel who have appeared in their coordinated or related action(s), so long as there is no duplication of work or effort, and the work is completed efficiently and economically.

H.    Should Lead Counsel determine that Liaison Counsel is necessary in these cases, Lead Counsel shall apply to the Court for designation of suggested counsel to fill that role. The application should include the duties Lead Counsel envisions Liaison Counsel will fulfill and the scope of Liaison Counsel's authority. Lead Counsel may

10

submit more than one name of an attorney or firm and ask the Court to select one attorney or firm from the list of suggestions.

I.    The following attorney is appointed as Liaison Counsel for defendants:

> Susan Kerr Lee
> Grant, Konvalinka & Harrison, P.C.
> Ninth Floor, Republic Centre
> 633 Chestnut Street
> Chattanooga, TN 37450
> 423-756-8400

Generally, Liaison Counsel for defendants will have the following responsibilities: (1) To distribute to all defendants' counsel copies of all notices, orders, and decisions of the Court, but only to the extent such papers are not communicated directly by the Court to all defendants' counsel; (2) To keep defendants' counsel fully informed of all relevant events, and to coordinate and schedule hearings with opposing counsel and the Court; and (3) To act as a primary contact person for the Court.

## VI.    CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Lead Counsel for the ERISA Benefits Denial Actions shall file a Consolidated Amended Class Action Complaint within thirty (30) days of this Order becoming final.[2] Defendants need not respond to any of the complaints in the separate ERISA Benefits Denial Actions referred to in section I.A, and defendants shall only be required to respond to the Consolidated Amended Class Action Complaint. The Consolidated Amended Class Action Complaint shall supersede any of the complaints on file in any of the ERISA Benefits Denial Actions, and shall be the operative complaint

---

[2] This Order will become final either thirty (30) days after it is entered, or on a later date if objections or proposed amendments to the Order are filed within thirty (30) days. *See, infra*, § XX. Finality: Objections and Proposed Amendments.

11

for any of the actions currently or subsequently consolidated with the ERISA Benefits Denial Actions.

VII.    **RESPONSIVE PLEADINGS**

      A.    Defendants shall have thirty (30) days from the date the Consolidated Amended Class Action Complaint for the ERISA Benefits Denial Actions is filed to answer, move, or otherwise plead in response to that Consolidated Amended Class Action Complaint.

      B.    If the defendants file a motion to dismiss, plaintiffs shall have thirty (30) days to file their response. Defendants will then have fourteen (14) days to file any reply.

      C.    If this Court so desires, oral argument on any motion to dismiss shall be heard on a date set by this Court.

VIII.    **CLASS CERTIFICATION**

      A.    Plaintiffs' motion for class certification in the ERISA Benefits Denial Actions shall be filed within forty-five (45) days of the filing of their Consolidated Amended Complaint. Defendants shall file their response within thirty (30) days, and plaintiffs shall file any reply brief within thirty (30) days.

      B.    Plaintiffs' motion for class certification in the *Taylor* action shall be filed within forty-five (45) days after the Court rules on plaintiffs' pending motion to remand.

IX.    **TRANSFEROR COURT ORDERS**

Any orders, including protective orders, previously entered in these actions, including orders entered by any transferor court, shall remain in full force and effect and shall apply to these consolidated and coordinated actions. However, such orders shall be subject to any modifications

Lead Counsel may submit to this Court within thirty (30) days of this Order becoming final, which are subsequently approved by this Court.

## X.    COMPLETED DISCOVERY

A.    All plaintiffs' attorneys in any of the Coordinated Benefits Actions shall make available (on reasonable request) their discovery (depositions, document productions, interrogatories and responses, requests for admission and responses, etc.) conducted to date to other plaintiffs' counsel in an effort to streamline further discovery and reduce the risk of unnecessary expenditures of time and cost associated with pursuing redundant discovery.

B.    Any outstanding written discovery which has been served on defendants by plaintiffs in any of the Coordinated Benefits Actions is hereby withdrawn.

## XI.    MEDIATION AND DISCOVERY

Pursuant to E.D.TN. L.R. 16.4, the Court **ORDERS** that mediation be conducted in the Coordinated Benefits Actions and that it take place simultaneously with discovery and pretrial litigation. Mediation shall be conducted as soon as practicable and in good faith. Lead Counsel for the ERISA Benefits Denial Actions and *Taylor* Lead Counsel shall coordinate their mediation efforts. Within thirty (30) days of this Order becoming final, Lead Counsel in the Coordinated Benefits Actions (or another attorney selected by either Lead Counsel to handle mediation) and counsel for defendant UnumProvident shall meet with:

Robert P. Murrian
Kramer, Rayson, Leake, Rodgers & Morgan
2500 First Tennessee Plaza
800 Gay Street
Knoxville, TN 37929-0629
865-525-5134

13

who is appointed as mediator for these actions. Mr. Murrian is authorized to directly bill the parties periodically for his services.

Should either Lead Counsel select another attorney to be responsible for mediation, that attorney shall have power to bind the plaintiffs whom he represents to the same extent as Lead Counsel. Counsel for defendant UnumProvident assigned to mediation must also have power to bind defendants.

At this meeting counsel shall discuss with Mr. Murrian the development of a comprehensive plan and framework for mediation. Among other issues the parties may decide are appropriate, this plan should encompass the following issues:

> (a) when mediation can begin,
> (b) what discovery must be obtained prior to the start of mediation,
> (c) what discovery is necessary to allow the parties to ascertain the identity of members of the class and its size,
> (d) how to structure discovery to facilitate mediation,
> (e) information on UnumProvident's financial condition to the extent the parties decide such information is relevant,
> (f) milestones or target dates for the accomplishment of certain mediation goals, and
> (g) any other information Lead Counsel needs in order to prepare for mediation.

Within five (5) days of the meeting each Lead Counsel or his designee and counsel for defendants shall file with the Court a joint report confirming that they met with Mr. Murrian. If any party has any objection to Mr. Murrian serving as mediator, such objections must be submitted within five (5) days of this meeting.

Within thirty (30) days of the meeting, the parties shall formulate a written comprehensive plan and submit the plan to Mr. Murrian for his approval. After approval, it must be submitted to the Court. Any revisions of the approved mediation plan must be approved by Mr. Murrian and the Court.

14

Thereafter, the parties shall submit to the Court on the first day of every second month a report on mediation setting out the following:

(a) their progress in mediation since the last report;
(b) whether they are on target to accomplish the goals set out in the mediation plan;
(c) whether they will be able to accomplish the goals set for the next target date;
(d) if they are behind schedule, how and why they fell behind, and if such failure was the fault of anyone, to identify that person;
(e) what mediation efforts are planned for the next reporting period; and
(f) whether additional assistance by the Court is needed to ensure mediation is successful.

These periodic reports shall be shared with Mr. Murrian.

Mr. Murrian is specifically authorized to explore and suggest creative techniques to assist in mediation. If he desires, he is authorized to meet separately and privately with counsel for each party to engage in confidential discussions to obtain a frank evaluation of each side's case. He is also authorized to explore and suggest such techniques as summary trials, advisory juries, and conferences with decision makers.

Solely for the purpose of mediation, the parties are authorized to engage in limited discovery that would be helpful in mediation. In formulating their discovery requests, Lead Counsel should take care not to duplicate requests for materials already in the possession of plaintiffs' counsel.

Defendants will have forty-five (45) days from receipt of such discovery requests to respond to them. Lead Counsel shall determine whether sufficient information has been voluntarily produced, and whether additional information must be produced before mediation can commence. The parties are required to meet and confer in an attempt to resolve discovery disputes before presenting any such disputes to the Court for resolution.

Assuming defendants have timely provided sufficient discovery for plaintiffs to proceed with mediation, the parties shall exchange mediation briefs and deliver them to Mr. Murrian within a time

limit to be set by Mr. Murrian. Mr. Murrian will also be responsible for setting a schedule to commence the mediation, keeping in mind the goal of having mediation proceed as quickly as possible.

The compensation of the mediator shall be determined by the parties and Mr. Murrian in accordance with E.D.TN. L.R. 16.4(i).

## XII.    ADDITIONAL DISCOVERY

The Court **ORDERS** that within thirty (30) days of this Order becoming final, Lead Counsel, or any attorney designated by Lead Counsel, shall confer with defendants' counsel regarding discovery. Within thirty (30) days thereafter Lead Counsel, or any attorney designated by Lead Counsel, shall formulate a discovery plan. This plan should address the scope, length, sequencing, timing, and nature of anticipated discovery. This plan should also address discovery needed for determining class certification, mediation, experts, if any, and the merits of the case. The plan may also include any other discovery issues Lead Counsel and defendants' counsel deem appropriate. Finally, the plan should include the parties' ideas on resolving discovery disputes. This plan must be submitted to the Clerk of Court for review by Magistrate Judge William B. Mitchell Carter and the Court.

## XIII.    SERVICE OF PAPERS

The parties shall develop several Service Lists for the service of any pleadings, motions, documents, or papers to be filed in these consolidated and coordinated actions on counsel for the parties. One list shall apply to filings related only to the ERISA Benefits Denial Actions ("ERISA Benefits Denial Actions Service List"). Another list shall apply to coordinated filings related to the Coordinated Benefits Actions ("Coordinated Benefits Actions Service List"). To the extent it is

useful, a third list shall be developed for the *Taylor* action. Service of any papers by defendants on plaintiffs in these consolidated and coordinated actions shall be deemed to be complete for all purposes when copies are served on plaintiffs' Lead Counsel and, if designated, Liaison Counsel.

A copy of each order of the Court will be provided to plaintiffs' Liaison Counsel, if designated, and to defendants' Liaison Counsel for distribution to the appropriate counsel and parties.

## XIV.  ACTIONS PENDING IN OTHER JURISDICTIONS

Counsel for the parties in the ERISA Benefits Denial Actions and in the *Taylor* action are to bring to the Court's attention any other related actions filed in any state or federal court promptly upon learning of the pendency of such action. To the extent any state court actions related to the Coordinated Benefits Actions are not stayed to minimize or eliminate the possibility of duplicative litigation or inconsistent adjudication, counsel in the Coordinated Benefits Actions shall use their best efforts to coordinate with counsel in those state and other cases with respect to the pretrial management of all cases, including discovery, in aid of efficient administration of all of these related cases.

## XV.  ADMISSION OF ATTORNEYS

Pursuant to Rule 1.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407(f), each attorney of record in any action transferred to this Court in this MDL-1552 proceeding, and who is a member in good standing of the bar of any district court of the United States, is admitted to practice before this Court in connection with these proceedings unless specifically objected to for any reasonable cause by any party within twenty (20) days after the attorney appears herein.

## XVI.  COURT APPEARANCES

In general, only plaintiffs' Lead Counsel, Liaison Counsel, or other designated plaintiffs' counsel may appear before the Court in these consolidated and coordinated actions at any given time to argue motions, appear at status conferences, or to report to the Court on matters affecting the consolidated and coordinated actions. In general, only one attorney may appear before the Court at any given time, unless Lead Counsel determines that an additional attorney is required to adequately present an argument or issue to the Court, or to adequately protect the interests of a plaintiff subclass.

## XVII.  TIME AND EXPENSE RECORDS

All plaintiffs' counsel involved in the ERISA Benefits Denial Actions shall keep a daily record of their time spent and expenses incurred in connection with this litigation, indicating with specificity the hours, location, and particular activity for which the time was recorded. A copy of all such recorded time and expenses shall be sent to Wechsler Harwood LLP every thirty (30) days after the entry of this Order. Counsel shall also submit to Wechsler Harwood a total reconciliation of time spent in these actions from inception through November 19, 2003, with their first such submission. Wechsler Harwood shall maintain these time and expense records, and they shall be provided to the Court, under seal, upon the Court's request for such information.

## XVIII. DOCUMENT PRESERVATION

In addition to any legal and ethical duties to preserve documents and evidence to which the parties are already subject, the parties to this litigation shall also be subject to an Order for Preservation of Records, which Lead Counsel shall file with this Court within fourteen (14) days of this Order becoming final.

Counsel shall develop and use a system for identifying by a unique number or symbol each

18

document produced or referred to during the course of this litigation. All copies of the same document should ordinarily be assigned the same identification number.

Counsel shall, to the extent possible, coordinate and consolidate their requests for production and examination of documents to eliminate duplicative requests from the same party. No party shall request documents available to it through a means of document storage and retrieval or from its own Lead or Liaison Counsel.

## XIX.  ANTICIPATED COMPLETION DATE OF ALL PRETRIAL MATTERS

The parties agreed that a reasonable date for completion of all pretrial matters, discovery and settlement efforts is December 1, 2005. Accordingly, the parties should be prepared for trials on the merits after December 1, 2005, in the Districts where the actions were originally filed.

## XX.  FINALITY: OBJECTIONS AND PROPOSED AMENDMENTS

The parties shall have thirty (30) days from the entry of this Order to file any objections or proposed amendments to the Order. Any such objections or proposed amendments shall not be a reargument for proposals previously submitted and considered by the Court. The First Management Order shall become final after the Court has ruled on any objections or proposed amendments. In the event that no objections or proposed amendments are filed, the Order shall become final thirty

(30) days from its entry.  Any plaintiffs' counsel that wishes to make any changes or amendments

to this Order after it becomes final shall coordinate such efforts with Lead Counsel, who may then

make a motion to the Court.

       **SO ORDERED.**

       **ENTER:**


                               _____
                                    CURTIS L. COLLIER
                                UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

|  |  |  |
|---|---|---|
| In Re: | ) | MDL Case No. 1:03-md-1552 |
|  | ) |  |
| UNUMPROVIDENT CORP. | ) | *ALL ACTIONS* |
| SECURITIES, DERIVATIVE, & | ) |  |
| ERISA LITIGATION | ) | Judge Curtis L. Collier |
|  | ) | Magistrate Judge William Carter |
|  | ) | Magistrate Judge Clifford Shirley |

## O R D E R

Having conducted two initial management conferences respecting the cases in Multidistrict Litigation No. 1552 ("MDL-1552") and formalized a leadership structure for those actions, the Court believes the adoption of a more circumscribed service list at this point in time will further the efficient and effective management of pretrial matters in this litigation. Accordingly, the Court hereby **ADOPTS** the Revised Attorney Service List for MDL-1552 which accompanies this Order (*see* Attachment A). The Revised Attorney Service List includes one attorney for each group of Defendants and those attorneys who have been or may potentially be designated as Lead Plaintiffs' Counsel in respect to the various subsets of actions included in MDL-1552. This Revised Attorney Service List replaces and supersedes all previous service lists utilized by the parties or the Court and all future filings relating to any or all of the actions comprising MDL-1552 shall be served consistent therewith. Service shall be deemed complete on all Plaintiffs and all Defendants when executed on all parties appearing on the Revised Service List.

The Clerk's Office is hereby **DIRECTED** to serve all future Orders entered by the Court in any or all of the actions comprising MDL-1552 upon those individuals appearing on the Revised Attorney Service List, and those individuals alone. If in the course of the proceedings the Court

determines changes to the Revised Attorney Service List are necessary, the Court will announce such changes in an Order. The Clerk's Office is additionally **DIRECTED** to maintain an updated and current version of the Revised Attorney Service List on the Court's website at all times, which shall be accessible to the parties at http://www.tned.uscourts.gov/cases/MDL/unum_provident.htm. Lead Counsel may request the Court designate another attorney or firm to receive service, but only one attorney and/or firm from each group of Plaintiffs or Defendants shall appear on the Revised Attorney Service List.

The Court reminds Lead Counsel in the various cases of the duties and responsibilities imposed upon them in the Court's two management orders. Specifically, Lead Counsel is required to distribute to all Plaintiffs' counsel copies of notices, orders, and decisions of the Court as necessary and maintain a complete file of all pleadings, motions, briefs, discovery requests, notices, orders, and decisions and make such file available for inspection by constituent Plaintiffs' counsel at reasonable hours. *See* MDL Case No. 1:03-md-1552, First Management Order, at 9 (December 22, 2003); MDL Case No. 1:03-md-1552, Second Management Order, at 8 (January 21, 2004).


**SO ORDERED.**

**ENTER:**


_____
CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE


2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| In re: ) | Lead Case No. 1:03-cv-1000 |
| ) | |
| ) | CLASS ACTION |
| UNUMPROVIDENT CORP. ) | |
| ERISA BENEFITS DENIAL ACTIONS ) | MDL Case No. 1:03-md-1552 |
| ) | |
| ) | Judge Curtis L. Collier |

| | |
|---|---|
| CAROL J. TAYLOR, ) | |
| ) | Case No. 1:03-cv-1009 |
| Plaintiff, ) | |
| ) | CLASS ACTION |
| v. ) | |
| ) | MDL Case No. 1:03-md-1552 |
| UNUMPROVIDENT CORP., *et al.*, ) | |
| ) | Judge Curtis L. Collier |
| Defendants. ) | |

**M E M O R A N D U M**

The Judicial Panel on Multidistrict Litigation has assigned to this Court a number of

putative class action lawsuits against Defendant UnumProvident Corporation ("UnumProvident")

and various of its directors, officers, and employees.[1]  For purposes of efficient case management,

the Court consolidated several of the cases and then grouped the cases into two broad categories by

subject matter.  The first such category is comprised of a number of putative class actions alleging

improper denial of disability insurance benefits under the Employee Retirement Income Security

Act of 1974 ("ERISA") and applicable state law (collectively, "Coordinated Benefits Actions").  The

---

[1]On January 3, 2003, the Judicial Panel on Multidistrict Litigation ordered certain cases
against UnumProvident pending in districts other than the Eastern District of Tennessee be
transferred to this district pursuant to 28 U.S.C. § 1407.

second category includes various putative securities fraud class action lawsuits brought on behalf

of purchasers of UnumProvident securities, two consolidated putative class actions brought on

behalf of UnumProvident employees participating in the company's 401(k) plan and alleging

violations of various fiduciary duties under ERISA, and a consolidated shareholder derivative action

asserting claims on behalf of UnumProvident against certain of its officers and directors ("Securities

Related Actions").

    This aspect of the case concerns the ERISA Benefits Denial Actions.  Plaintiffs in these

actions ("Plaintiffs") filed a Motion for Expedited Notice to Class Members of Pendency of

Proposed Class Actions with the Court on December 9, 2004, and requested an expedited hearing

on the motion (Case No. 1:03-cv-1000, Court File Nos. 95, 97, 99; Case No. 1:03-cv-1009, Court

File Nos. 62, 64, 66).  Because Defendants responded they intend to notify certain of their insureds

(and putative class members in these actions) of their settlement with state insurance regulatory

authorities and the United States Department of Labor as soon as January 4, 2005, the Court held

a hearing regarding Plaintiffs' requested notice on December 28, 2004.  Present representing

Plaintiffs were Robert Harwood, Matthew Houston, and Susanne Scovern, and present for the

Defendants were John Konvalinka, William Kayatta, Chris Collins and Barbara Furey[2].

    At the conclusion of that hearing, after considering the parties' filings regarding the motion

and hearing oral arguments by counsel for Plaintiffs and Defendants, the Court announced its

decision from the bench that it **DENIED** Plaintiffs' motion.  This memorandum will articulate the

---

    [2]The Court notified the United States Department of Labor (DOL) of the Plaintiffs' motion
and the scheduled hearing on the motion and invited DOL to respond to the motion and to participate
in the hearing.  By email make a part of the record of the hearing, DOL indicated it would not
participate in the hearing but made its position known.

reasons for the Court's decision.

## I.   **STANDARD OF REVIEW**

The burden is on the moving party to show both that the Court has the authority to take the action it seeks, and that such action is warranted by the facts.

## II.   **RELEVANT FACTS**

In September 2003, Maine, Massachusetts, and Tennessee ("Lead States") commenced a multi-state market conduct examination into the long-term disability income claims handling practices of UnumProvident, Unum Life Insurance Company of America, The Paul Revere Life Insurance Company, and Provident Life and Accident Company ("Defendants").  The other 47 states, the District of Columbia, and American Samoa ("participating jurisdictions") joined the examination.  The Office of the New York Attorney General ("NYAG") in September 2003 announced it would be conducting a similar investigation.  The United States Department of Labor ("DOL") in March 2004 began its own investigation into UnumProvident subsidiaries under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, relating to its ERISA benefit plans.

The Lead States' and DOL investigations recently were settled, with the Lead States, the DOL, and the companies entering into a Regulatory Settlement Agreement (hereinafter "RSA", see Case No. 1:03-cv-1000, Court File No. 89, Exhibit 1; Case No. 1:03-cv-1009, Court File No. 57, Exhibit 1).  The NYAG was not a party to the RSA but has announced it supports it and is closing its investigation.  The RSA requires approval by no less than two-thirds of the participating

3

jurisdictions for it to go into effect, and as of December 22, 2004 the RSA had been approved by 40 states and the District of Columbia (Case No. 1:03-cv-1000, Court File No. 106; Case No. 1:03-cv-1009, Court File No. 72). Because more than the required two-thirds of participating jurisdictions approved the RSA, it is now in effect.

The RSA provides for reassessment of certain denials of claims or terminations of benefits (RSA at 9-12). Claimants whose claims were denied or benefits terminated on or after January 1, 2000 and prior to the Implementation Date (which the RSA defines as thirty days after approval by two-thirds of the participating jurisdictions, or January 20, 2005) may have their claims reassessed and will receive notice of the reassessment process. Other claimants, whose claims were denied or benefits terminated between January 1, 1997 and January 1, 2000 may request to have their claims reassessed, but will not receive notice of the RSA reassessment scheme. Defendants informed the Court they intend to mail out these notices on a rolling basis beginning January 4, 2005 in order to meet the deadlines for notice to claimants set out in the RSA (Case No. 1:03-cv-1000, Court File No. 105; Case No. 1:03-cv-1009, Court File No. 71).

The RSA provides if a claimant participates in the reassessment process, Defendants may require that claimant to agree "if (and only if) the reassessment results in a reversal or other change in the prior decision denying or terminating benefits, then such claimant shall not pursue any legal action to the extent (and only to the extent) such action is based on any aspect of the prior denial or termination that is reversed or changed" (RSA at 14). The RSA also provides for tolling of the applicable statutes of limitation during the pendency of the claimant's reassessment process (*Id.*). The notice letter Defendants propose to send out to claimants includes this language and advises claimants about the waiver issue in detail (*See* Case No. 1:03-cv-1000, Court File No. 99, Exhibit

4

A; Case No. 1:03-cv-1009, Court File No. 66, Exhibit A).

## III.   **DISCUSSION**

Plaintiffs in their motion request an Order providing for expedited notice of the pendency of the *Benefits Denial* and *Taylor* proposed class actions to putative class members.  Plaintiffs ask the Court to order Defendants either to insert language drafted by Plaintiffs in the RSA notice Defendants send to putative class members or to enclose a separate letter drafted by Plaintiffs with the RSA notice.[3]  Plaintiffs assert the Court has the authority to order such notice under Rule 23(d), which governs class actions:

> In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (2) requiring, **for the protection of the members of the class or otherwise for the fair conduct of the action,** that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action. . .

Fed. R. Civ. P. 23(d) (emphasis added).  While the Court agrees it has the authority to order notice to putative class members prior to certification of the class in some situations, the Court does not believe such notice is appropriate here.  Because the Court finds Plaintiffs have not shown such notice is necessary "for the protection of the members of the class or otherwise for the fair conduct of the action," the Court finds Plaintiffs have not shown the notice Plaintiffs request is appropriate under Rule 23, and thus the Court will refrain from ordering such notice.

---

[3] Plaintiffs' proposed language for insertion into Defendants' notice letter is found in Case No. 1:03-cv-1000, Court File No. 99, Exhibit D; Case No. 1:03-cv-1009, Court File No. 66, Exhibit D.  Plaintiffs' proposed letter for enclosure with Defendants' notice letter is found in Case No. 1:03-cv-1000, Court File No.  99, Exhibit E; Case No. 1:03-cv-1009, Court File No. 66, Exhibit E.

A.    **Concurrent Notice of Pending Class Action and RSA Reassessment to Prevent Abuse by Defendants**

Plaintiffs in their brief first argue Rule 23 authorizes the notice they request to prevent abuse that might occur from Defendants' notice of the RSA reassessment process to putative class members. Plaintiffs characterize Defendants' proposed notice as "misleading," arguing because it informs claimants of the RSA reassessment process, but not the alternative sought in the proposed class action, it only tells part of the story. In addition, Plaintiffs argue fundamental fairness and equity require this notice to prevent prejudice to potential class members who may make a decision to participate in the RSA without being completely informed about their options. Defendants respond by asserting the cases allowing corrective notice to a proposed class before it is certified revolve around a court's finding of abuse, coercion, or fraud, none of which is present here, and thus corrective notice is not warranted.

Courts have ordered corrective notice under Rule 23 "for the protection of the members of the class or otherwise for the fair conduct of the action" where a party has made or intends to make abusive, coercive, or misleading statements to putative class members, but courts have refrained from ordering a corrective notice under Rule 23 when these elements were absent. *See, e.g., Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995) (overturning district court's order requiring defendant to publish plaintiffs' opinion piece in defendant's newsletter to putative class members and refrain from expressing its opinion the suit was meritless, because the record did not show clear findings of misrepresentation and the likelihood of serious abuses by defendant to support such an order, even though defendant's statements were "somewhat misleading"); *School Asbestos Litigation v. Lake Asbestos of Quebec, Ltd, et. al.*, 842 F.2d 671 (3d Cir. 1987) (finding appropriate an affirmative disclosure requirement to notify class

6

members of defendants' sponsorship of a trade group sending out informational pamphlets regarding the merits of the lawsuit, implicitly urging nonparticipation in the suit but not revealing its self-interestedness, on all communications between the trade group and class members); *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 498 (E.D. Pa. 1995) (ordering corrective notice where some plaintiffs' counsel contacted class members seeking opt-outs from the class and a settlement of the class action with which they disagreed, and made "numerous inaccurate statements and misleading omissions related to key points of the settlement agreement"); *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630 (N.D. Tex. 1994) (finding corrective notice was not appropriate, although potential for coercion existed, where defendant contacted putative class members urging them to opt out of the proposed class action, because the record contained little evidence of actual harm, the class had yet to be certified, and a corrective notice was potentially confusing to putative class members); *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720 (W.D. Ky. 1981) (ordering corrective notice where defendant contacted class members and disclosed discouraging information about the class action the court had not allowed it to include in the official class notice).

Because the United States Court of Appeals for the Sixth Circuit has not spoken on this precise issue, the Court will follow these courts' guidance. Plaintiffs have not shown any abuse, coercion, or affirmative misrepresentations by Defendants in their proposed notice of the RSA reassessment process. The notice letter Defendants intend to send to putative class members expressly explains the claims a claimant waives by participating in the RSA reassessment (*See* Case No. 1:03-cv-1000, Court File No. 99, Exhibit A; Case No. 1:03-cv-1009, Court File No. 66, Exhibit A). While, as Plaintiffs argue, this may be confusing to some unsophisticated putative class members, the Court believes any waiver notice has the potential to be confusing to unsophisticated

7

claimants. Defendants' proposed notice explains this waiver in detail, which lessens the likelihood

for confusion (*See Id.*). In addition, Defendants' notice instructs a claimant who has commenced

legal action against Defendants regarding a prior claim decision to contact her attorney, and advises

her about the effect of the waiver on such an action (*See Id.*). Accordingly, since Plaintiffs have not

shown Defendants' conduct is the type that would necessitate a corrective notice to remedy

confusion or misstatements, the Court does not believe such a corrective notice fits within Rule 23's

authorization for the Court to order such notices as are necessary "for the protection of the members

of the class or otherwise for the fair conduct of the action." Fed. R. Civ. P. 23(d).

      **B.**      **Notice of Action Contemporaneously with Request for Waiver of Rights to Participate in Action**

      Plaintiffs also argue putative class members should receive notice of the relief their proposed

class action seeks (independent re-review of claims, rather than the internal re-review by

Defendants' employees afforded by the RSA) at the same time they receive notice of Defendants'

RSA reassessment process and request for waiver of rights to that relief, to avoid forcing them to

make an uninformed decision about whether to participate in the RSA reassessment. Plaintiffs

interpret the RSA waiver provision as requiring any claimant who participates in the RSA

reassessment who receives "any monetary relief, even a dollar more" than Defendants originally

granted, to be bound to the outcome of the RSA reassessment process, denying access to subsequent

judicial review (*See* Case No. 1:03-cv-1000, Court File No. 97 at 3; Case No. 1:03-cv-1009, Court

File No. 64 at 3). Thus, they contend, claimants should be informed about the claims involved in

the proposed class action before being asked to waive the right to bring those claims by taking part

in the RSA reassessment process.

      Defendants claim Plaintiffs have misinterpreted the RSA waiver provision. Defendants

argue this provision requires a claimant taking part in the RSA reassessment to waive his rights to sue Defendants only as to "a reversal or other change in the prior decision denying or terminating benefits" (*i.e.*, a full or partial grant of benefits where benefits had previously been denied or terminated) in the reassessment of her claim (*See* Case No. 1:03-cv-1000, Court File No. 105 at 5; Case No. 1:03-cv-1009, Court File No. 71 at 5, quoting the RSA at 14). Thus, if a claimant receives a grant of full benefits after the RSA reassessment, Defendants concede he has waived all of his rights to sue Defendants regarding their original denial of his claim, but since he has received his benefits, he has been granted the full relief any lawsuit would seek. If, however, a claimant undergoes the RSA reassessment and part or all of his claim for benefits is again denied, he retains his right to sue Defendants as to the portion of his claim that is denied. Thus, Defendants argued during the hearing a putative class member waives virtually nothing by participating in the RSA reassessment.[4] Defendants further argued a claimant would be irrational not to participate in what Defendants characterized as a guaranteed "free shot" at reassessment in favor of hoping for the uncertain relief requested in the proposed class action, in which the class has not yet been certified.

The Court agrees with Defendants' characterization of the waiver provision, and finds the waiver required in the RSA reassessment process is insignificant to the claims involved in the proposed class action. Indeed, the proposed class action will continue to proceed while the RSA reassessment process takes place, and because the RSA allows for tolling of the relevant statutes of limitation for any claimant taking part in the RSA reassessment (RSA at 14), a claimant whose claim is fully or partially denied during the RSA reassessment may join the proposed class action after her

---

[4]Defendants additionally agreed with the Court during the hearing they will be estopped from later arguing this waiver provision bars claimants from suing Defendants over any full or partial denial of claims Defendants may make during the RSA reassessment process.

RSA reassessment is complete and sue over the parts of her claim that were not remain denied after the RSA reassessment. Therefore, the Court finds the waiver requested by participation in the RSA reassessment does not require notice of the proposed class action contemporaneously with the waiver request, as has been required by other courts where a defendant sought a significant waiver of claims involved in the class action. *See, e.g., Jenifer v. Delaware Solid Waste Auth.*, 1999 WL 117762 (D. Del. 1999) (defendant ordered to include notice of pending class action in communications seeking settlement of claims involved in the action); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132 (S.D.N.Y. 2001) (defendant ordered to include notice of pending class action in communications seeking settlement of claims involved in the action).

Because Plaintiffs could not provide the Court with an example of a rational claimant who would forego the RSA reassessment process in favor of the uncertain re-review relief of the proposed class action, the Court finds notice of the proposed class actions would not aid a rational claimant in deciding whether to participate in the RSA reassessment. Thus, the requested notice will not provide for the "protection of the members of the class or otherwise for the fair conduct of the action." Fed. R. Civ. P. 23(d). In fact, the Court finds notice of this action would merely confuse claimants and discourage them from participating in the RSA reassessment without giving them good reasons not to do so. Because Plaintiffs did not show the notice they request falls into either of the two categories listed in Rule 23, the Court finds such notice is not appropriate under that rule.

## IV.    **CONCLUSION**

For the aforementioned reasons, and in accordance with the ruling announced at the hearing

10

on December 28, 2004, the Court will **DENY** Plaintiffs' motion (Case No. 1:03-cv-1000, Court File No. 99; Case No. 1:03-cv-1009, Court File No. 66).


/s/
_____
CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| In re:<br><br>UNUMPROVIDENT CORP.<br>ERISA BENEFITS DENIAL ACTIONS | )<br>)<br>)<br>)<br>)<br>)<br>) |

Lead Case No. 1:03-cv-1000

<u>CLASS ACTION</u>

MDL Case No. 1:03-md-1552

Chief Judge Curtis L. Collier

### <u>ORDER</u>

In accordance with the accompanying memorandum, the Court **GRANTS** the motion for class certification filed by Plaintiffs Theresa Keir, Michelle Lynn Washington, Karen Gately, Thomas Rocco, Thomas P. Davis, Marvina Jenkins, Edmundo M. Rombeiro (Court File No. 29).

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**